# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | **CV 20-15-BU-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| TRIPLE L, INC., et al., | |
| Defendants. | |

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed this declaratory judgment action to determine coverage under a commercial automobile insurance policy that State Farm issued to Defendant Triple L, LLC ("Triple L"). Doc. 1. State Farm and Triple L have filed cross motions for summary judgment. Doc. 33 & 37. The Court held a hearing on February 17, 2021. Doc. 60.

**BACKGROUND.**

Triple L maintains several contracts with the United States Postal Service ("USPS") to deliver mail to rural areas near East Glacier, Montana. Doc. 34 at 8. The exact arrangement by which Triple L satisfies its contractual obligations proves complicated. Triple L owns no delivery trucks and claims to employ no drivers.

1

Triple L claims instead that it obtains all of the necessary delivery trucks and drivers from third parties.  Doc. 1 at 2.

**Penske, LLC.**

Triple L leases all of its delivery trucks from Penske, LLC ("Penske"). Triple L maintains a commercial automobile insurance policy (No. 051219-A23-26B) ("policy") with State Farm to insure all of the trucks leased from Penske. Doc. 35 at 2.  The policy states that State Farm will pay damages for which Triple L has become legally obligated to pay because of bodily injuries to others caused by an accident that involves a leased Penske truck.  *Id*.  The policy includes several coverage exclusions.  *Id*.  The employee exclusion bars coverage of damages for bodily injury to Triple L's employees that arises out of that employee's employment. *Id*. at 3.  The workers' compensation exclusion bars coverage of damages for bodily injury that would otherwise be covered by a workers' compensation policy.  Doc. 34 at 26−27.

**Phoenix, LLC.**

Triple L obtains all of its drivers from Phoenix, R.C.M., Inc. ("Phoenix"). Doc. 37-1 at 2.  Not surprisingly, the exact business arrangment between Triple L and Phoenix proves complicated.  Jeffrey Love and Milka Love are married.  Jeffrey Love serves as president of Triple L.  Milka Love serves as the president of Phoenix. Doc. 35 at 8.  Milka Love also serves as secretary/treasurer of Triple L.  *Id*.  Both

Triple L and Phoenix are registered and operated out of the Love's personal residence. *Id*. at 11. Both Triple L and Phoenix are registered with the Montana Secretary of State under the same email address. *Id*.

Historically, Triple L employed directly all the drivers it needed to perform its USPS contracts. *See* Doc. 35 at 10. Milka Love formed Phoenix in 2004, and, shortly afterwards, Triple L transferred all its drivers to Phoenix. Doc. 35 at 9. The transfer occurred, in part, as a means of avoiding higher the workers' compensation rates that resulted from Jeffrey Love getting injured while working for Triple L. *Id*.

**Underlying Claims.**

On December 7, 2016, John Oeleis allegedly suffered injuries while operating a tailgate lift on one of Triple L's leased Penske trucks. Doc. 34 at 9. Oeleis submitted a claim under Phoenix's workers' compensation policy and filed suit against Triple L and Penske in the Montana Eighteenth Judicial District Court, Gallatin County. Doc. 1-2. Count I alleges negligence against Triple L. Doc. 34 at 9. Count II alleges that Triple L violated Montana's Occupational Safety and Health Act. *Id*. at 10.

State Farm issued a reservation of rights letter to Triple L and filed this declaratory judgment action to determine coverage under the policy. Doc. 1. State Farm argues that Triple L employs Oelie, and, therefore, his injuries are excluded under the employee exclusion and the workers' compensation exclusion. Doc. 34.

3

Triple L argues that Phoenix employs Oeleis, and, therefore, his injuries are covered under the policy.  Doc. 41.

**STANDARD OF REVIEW.**

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact proves genuine if there exists sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id*. at 248.

**ANALYSIS.**

### Applicability of the Policy's Employee Exclusion.

The policy's employee exclusion precludes coverage.  Doc. 35 at 2.  The applicability of the employee exclusion hinges on whether Oeleis constitutes an employee of Triple L.  The test in Montana for whether an individual qualifies as an employee asks whether the employer possessed the right to control the details of an individual's work.  *Carlson v. Cain*, 664 P.2d 913, 919 (Mont. 1983).  The Montana Supreme Court adopted the control test for determining whether an employer possessed that right to control.  *Sharp v. Hoerner Waldorf Corp*., 584 P.2d 1298, 1301−02 (Mont. 1978).

4

The control test requires courts to look at the following factors: (1) direct evidence of a right to control; (2) method of payment; (3) furnishing of equipment; and, (4) right to fire. *Id*. at 1301-02. These factors are not considered as parts of a balancing test; rather, employment status can be determined upon the satisfaction of any one of these factors. *Schrock v. Evans Transfer & Storage*, 732 P.2d 848, 851 (Mont. 1987).

### 1. Direct Evidence of a Right to Control.

The first factor of the control test requires the Court to consider direct evidence in the record of Triple L's right to control the details of Oeleis's work. *See Sharp*, 584 P.2d at 1301−02. Although the exercise of control would suggest a right to control, the Court need only consider whether Triple L maintained the right to control. *Walling v. Hardy Constr*. 807 P.2d 1335, 1339 (Mont. 1991).

The record contains strong evidence that Triple L maintained the right to control the details of Oeleis's work. *See Sharp*, 584 P.2d at 1301−02. Triple L's contracts with the USPS constitute the best evidence of Triple L's right to control. These contracts required Triple L to control the details by which its drivers perform their deliveries under the USPS contracts. Doc. 35 at 15. Triple L remained responsible for controlling the schedule, conditions, and terms of its drivers' work pursuant to certain contractual requirements and standards. Doc. 35 at 15. This responsibility included enforcing the schedule on which drivers were to make

deliveries, including which days certain routes were to be taken and at what time drivers were to arrive at, and depart from, each stop. *Id*. Drivers were instructed to call Triple L if they had any questions about the delivery schedule, the route, or the equipment. These instructions further indicate the level at which Triple L was responsible for controlling its drivers. *Id*. at 22.

The USPS contracts also required that Triple L ensure that the drivers conducted and presented themselves in a manner consistent with standards laid out in the USPS contracts. Doc. 35 at 21. These contractual requirements demonstrate that Triple L possessed the right to control the details of Oeleis's work. *See Sharp*, 584 P.2d at 1301−02.

### 2. Method of Payment.

The second control test factor requires the Court to consider the method by which Oeleis received payment. *See Sharp*, 584 P.2d at 1301−02. The record proves foggy regarding the precise method by which Oeleis received payment. The record indicates that Phoenix issued paychecks to Oeleis. Doc. 60. If the analysis focused solely on which entity wrote a person's paycheck, this factor would suggest that Oeleis does not qualify as an employee of Triple L. The Court must examine the broader method by which Oeleis receives payment. *See Sharp*, 584 P.2d at 1301−02

Triple L contends that Phoenix pays its drivers' salaries and then bills Triple L for the use of its drivers and for a consulting and accounting fee. Doc. 35 at 11. The

USPS, in turn, reimburses Triple L for certain employee charges related to the performance of the USPS contracts. *Id.* The record fails to identify precisely the services included in this consulting and accounting fees.

The nature of the business arrangement between Phoenix and Triple L makes analysis of this factor more difficult. Phoenix maintains no clients other than Triple L. Doc. 35 at 11. Triple L obtains all its drivers from Phoenix. *Id.* On paper, Triple L and Phoenix constitute separate entities. The reality of these entities tells a different story. Jeffrey Love and Milka Love serve as president of their respective companies. Milka Love also serves as secretary/treasurer of Triple L. Triple L and Phoenix are registered with the Montana Secretary of State to the same email address and the same physical address—the Love's personal residence. *Id.* The record shows that the Loves do not implement any measures through which they seek to separate the two entities' business files, personnel records, or payroll information. *Id.*

The record fails to explain whether Triple L and Phoenix even maintain separate financial accounts. For purposes of analyzing the method by which Oeleis received payment, however, the Court will presume that Triple L and Phoenix maintain separate financial accounts. The Court also will consider Triple L and Phoenix as entirely separate entities, despite the apparent comingling. The Court must conclude, therefore, that the record does not sufficiently demonstrate that the

method by which Oeleis received payment indicates an employment relationship with Triple L.  *See Sharp*, 584 P.2d at 1301−02.

The Court would have more pause regarding the method of payment analysis if the record were to indicate that Phoenix charged Triple L exactly the amount Phoenix pays its drivers.  The existence of a consulting and accounting fee suggests, at least on its face, that Phoenix provides some other service than merely serving as a shell company by which Triple L pays its drivers.  An entity should not escape the conclusion that the method of payment suggests an employment relationship simply by first funneling the money through a third party.

### 3.  Furnishing of Equipment.

The third factor of the control test requires the Court to examine whether Triple L furnished Oeleis with equipment to an extent that would suggest an employment relationship.  *See Sharp*, 584 P.2d at 1301−02.  An entity furnishing valuable equipment strongly suggests an employment relationship.  *Schrock*, 732 P.2d at 851.  Triple L furnishes its drivers with all the equipment necessary to perform the USPS contracts.  Doc. 35 at 22.  This equipment includes a delivery truck, a tailgate lift, and other miscellaneous tools.  *Id*.  Conversely, the record suggests that the only training or equipment provided to the drivers by Phoenix are jointly issued cell phones.  *Id*.

The Montana Supreme Court has noted the lack of cases in which an entity provides an individual with a vehicle and the court determines that the individual was not an employee. *Schrock*, 732 P.2d at 851. "Any owner who furnishes equipment as valuable as a tractor and trailer naturally maintains an interest in its care and typically will retain a right to supervise its use." *Id*. Triple L maintained some control of the equipment even after assigning it to the drivers. If the drivers' experienced problems with any of Triple L's delivery trucks, the drivers were instructed to report those problems to Triple L, who, in turn, would report those problems to the leasing company. Doc. 35 at 21−23. Triple L trained all of its drivers to properly use this equipment. *Id*. at 23. The fact that Triple L furnished Oeleis with all the valuable equipment necessary to perform his job strongly indicates that Oeleis qualifies as an employee of Triple L. *Schrock*, 732 P.2d at 851.

### 4.  Right to Fire.

The fourth factor of the control tests requires the Court to examine whether Triple L maintained the right to fire Oeleis. *See Sharp*, 584 P.2d at 1301−02. Triple L contends that Phoenix retained the sole authority to fire Oeleis. Doc. 37-2. This argument erroneously ignores that Triple L remained solely responsible for ensuring that its drivers abided by the requirements and standards of the USPS contracts. Doc. 35 at 18. These contracts required that Triple L ensure that its drivers conduct themselves safely and in accordance with the standards established by the USPS

contract.  *Id*.  Triple L necessarily must possess the authority to bar Oeleis from driving for Triple L if Oeleis were to make deliveries or conduct himself in a manner that proved inconsistent with the requirements and standards of the USPS contracts. This authority exists even if Triple L could not technically terminate Oeleis's employment with Phoenix.  The end result remains that Triple L must maintain the authority under the USPS contracts to bar Oeleis from making deliveries under the USPS contracts.

The business arrangement between Triple L and Phoenix again complicates this analysis.  The Court wonders what the ultimate effect would be if Triple L barred Oeleis from making deliveries for Triple L under the USPS contracts given that Phoenix has no other clients.  The Court cannot imagine that Phoenix would retain Oeleis as a driver after he had been barred from driving for the only company to whom Phoenix provides drivers.

The record also shows that Triple L participated in Oeleis's initial hiring process.  Doc. 35 at 24.  Triple L had the USPS conduct an initial background check and a review of Oeleis's driving record.  *Id*.  Triple L and Phoenix jointly interviewed Oeleis.  Triple L's investment in the hiring of the drivers indicates that Triple L maintained at least some degree of authority regarding employment decisions. Triple L's contractual authority and investment in the employment process indicate that Triple L maintained the right to fire Oeleis.  *See Sharp*, 584 P.2d at 1301−02.

**CONCLUSION.**

The Court's analysis of the control test applied to the record presented here demonstrates that Oeleis qualifies as an employee of Triple L.  *See Carlson*, 664 P.2d at 919; *Sharp*, 584 P.2d at 1301−02.  Triple L maintained the right to exercise significant control over the details of Oeleis's work.  This control went as far as dictating the dates and the times at which Oeleis must make specific deliveries to specific stops and the manner in which Oeleis would conduct himself at those stops. Triple L also provided all of the equipment necessary to perform his job, including a valuable delivery truck and tailgate lift.  Triple L maintained the authority effectively to terminate Oeleis's employment.  The uncertainty involving the method by which Oeleis received payment does not alter the Court's determination because each *Sharp* factor on its own can prove sufficient to demonstrate that Oeleis qualifies as an employee of Triple L.  *Schrock*, 732 P.2d at 851.

The Court's determination that Oeleis qualifies as an employee of Triple L triggers the policy's employee exclusion.  The Court need not address State Farm's argument that the workers' compensation exclusion also applies.  The application of the employee exclusion proves sufficient to preclude coverage and resolve this declaratory judgment action.

**IT IS HEREBY ORDERED**:

1.  Plaintiff State Farm's Motion for Summary Judgment (Doc. 33) is **GRANTED**.

11

2.  Defendant Triple L's Motion for Summary Judgment (Doc. 37) is **DENIED**.

3.   The Clerk shall enter judgment in favor of State Farm Mutual Automobile Insurance Company.

Dated the 27th day of April, 2021.


_____
Brian Morris, Chief District Judge
United States District Court