IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRIPLE L, INC., et al.,<br><br>Defendants. | CV-20-15-BU-BMM<br><br>**ORDER** |

**INTRODUCTION**

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed this declaratory judgment action to determine coverage under a commercial automobile insurance policy, No. 051219-A23-26B ("State Farm Policy"), that State Farm issued to Defendant Triple L, Inc. ("Triple L"). (Doc. 1.) State Farm and Triple L filed cross-motions for summary judgment. (Doc. 33; Doc. 37.)

The Court granted summary judgment in favor of State Farm on April 27, 2021. (Doc. 68.) The Court determined that the Employee Exclusion in the State Farm Policy barred coverage for the injuries John Oeleis ("Oeleis") sustained while driving for Triple L. (*Id.* at 4.) The Court found that Oeleis qualified as an

employee of Triple L under Montana's four-factor "control test." (*Id.* at 10–11.) Triple L appealed. (Doc. 70.)

The Ninth Circuit reversed and remanded in a memorandum opinion on May 23, 2022. *State Farm Mut. Auto. Ins. Co. v. Triple L. Inc.*, 2022 WL 1616978, *2 (9th Cir. May 23, 2022). The Court ordered supplemental briefing on the parties' cross-motions for summary judgment on August 22, 2022. (Doc. 80.) The Court conducted a new hearing on October 27, 2022. (Doc. 89.)

## FACTUAL AND LEGAL BACKGROUND

Triple L maintained several contracts with the United States Postal Service ("USPS") to deliver mail to rural areas near East Glacier, Montana. (Doc. 34 at 8.) Triple L owned no delivery trucks and directly employed no drivers. Triple L instead contracted with third parties for delivery trucks and drivers. (Doc. 1 at 2.) Triple L obtained all its drivers from Phoenix, R.C.M., Inc. ("Phoenix"). (Doc. 37-1 at 2.) Triple L leased its delivery trucks from Penske, LLC ("Penske"). (*Id.*)

Jeffrey Love serves as president of Triple L. (Doc. 35 at 8.) Milka Love, his wife, serves as the president of Phoenix and secretary/treasurer of Triple L. (*Id.*) Triple L initially employed the drivers it needed to perform its USPS contracts. (*Id.* at 10.) Milka Love formed Phoenix in 2004. (*Id.* at 9.) Shortly afterwards, Triple L transferred all its drivers to Phoenix. (*Id.*) The transfer occurred, in part, as a means of avoiding the higher workers' compensation insurance rates that resulted from

Jeffrey Love having been injured while working for Triple L. (*Id*.) Triple L and Phoenix are both registered under the same email address and operated from the personal residence owned by the Loves. (*Id*. at 11.)

Oeleis allegedly suffered injuries while operating a tailgate lift on one of Triple L's leased trucks on December 7, 2016. (Doc. 34 at 9.) Oeleis submitted a claim under Phoenix's workers' compensation policy and filed a separate action against Triple L and Penske in the Montana Eighteenth Judicial District Court, Gallatin County. (Doc. 1-2.)  Count I alleges negligence against Triple L. (Doc. 34 at 9.) Count II alleges that Triple L violated Montana's Occupational Safety and Health Act. (*Id*. at 10.)

The State Farm Policy insures the trucks that Triple L leases from Penske. (Doc. 1-1.) The State Farm Policy states that State Farm will pay damages for which Triple L has become legally obligated to pay because of bodily injuries to others caused by an accident that involves a leased Penske truck. (Doc. 35 at 2.) The State Farm Policy includes several coverage exclusions. (*Id*.) The Employee Exclusion in the State Farm Policy bars coverage of damages for bodily injury to Triple L's employees that arises out of that employee's employment. (Doc. 1-1 at 24.) The Workers' Compensation Exclusion in the State Farm Policy bars coverage of damages for bodily injury that would otherwise be covered by a workers' compensation policy. (*Id*.)

State Farm issued a reservation of rights letter to Triple L and filed this declaratory judgment action to determine coverage under the State Farm Policy. (Doc. 1.) State Farm argued in its initial summary judgment briefing that the State Farm Policy excluded coverage for Oeleis's injuries under both the Employee Exclusion and the Workers' Compensation Exclusion. (Doc. 34.) Triple L argued that the State Farm Policy covered Oeleis's injuries because Phoenix employed Oeleis. (Doc. 41.) The Court granted summary judgment for State Farm. (Doc. 68.) The Court found that Oeleis served as a Triple L employee and that the Employee Exclusion in the State Farm Policy barred coverage. (*Id.* at 11.)

The Ninth Circuit determined on appeal that Oeleis was a Phoenix employee for purposes of the Employee Exclusion in the State Farm Policy and that the Court improperly had granted summary judgment in favor of State Farm on the basis that the Employee Exclusion in the State Farm Policy barred coverage. *Triple L*, 2022 WL 1616978, at *1–2. The Ninth Circuit reversed and remanded for further proceedings. *Id.* at *2. Post-remand, State Farm contends in its supplemental briefing that the Workers' Compensation Exclusion in the State Farm Policy bars coverage. (Doc. 84.) Triple L and Oeleis disagree. (Doc. 86; Doc. 83.) For the reasons described below, the Court finds that the Workers' Compensation Exclusion in the State Farm Policy bars coverage, and, therefore, supports granting summary judgment in favor of State Farm.

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248.

## DISCUSSION

### I. Impact of the Ninth Circuit Memorandum Opinion on State Farm's Workers' Compensation Exclusion Claim.

The Ninth Circuit's memorandum opinion determined that the Court had erred in applying Montana's control test rather than analyzing the language of the Employee Exclusion in the State Farm Policy according to its "usual, common sense meaning." *Triple L*, 2022 WL 1616978, at *1 (quoting *Park Place Apartments, L.L.C. v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236, 239 (Mont. 2010) (citation omitted)).

The Ninth Circuit looked to the Montana Supreme Court's interpretation of the "usual and common sense meaning" of the term "employee" in the context of insurance exclusions that seek to bar coverage for injuries to an insured's employees. *Triple L*, 2022 WL 1616978, at *2 (citing *Farmers Union Mut. Ins. Co. v. Horton*, 67 P.3d 285, 289 (Mont. 2003)). *Horton* determined that "employee" in

this context instead "refer[s] to all those engaged in . . . services for wages and salary by another." *Id.* Following the reasoning of *Horton*, the Ninth Circuit concluded that Oeleis was not Triple L's employee because Phoenix—not Triple L—paid Oeleis's wages. *Triple L*, 2022 WL 1616978, at *2. The Employee Exclusion in the State Farm Policy did not bar coverage as a matter of law. *Id.*

The Court's initial grant of summary judgment declined to address the Workers' Compensation Exclusion in the State Farm Policy. (Doc. 68 at 11.) The Order provided that "[t]he Court need not address State Farm's argument that the workers' compensation exclusion also applies." (*Id.*) The sole issue on appeal concerned the applicability of the Employee Exclusion in the State Farm Policy. *Triple L*, 2022 WL 1616978, at *1–2. The Ninth Circuit did not consider or address the Workers' Compensation Exclusion in the State Farm Policy.

## II. Whether the Workers' Compensation Exclusion Bars Coverage.

State Farm's remaining claim concerns the Workers' Compensation Exclusion in the State Farm Policy. The exclusion provides as follows: "There is no coverage for an insured or for that insured's insurer for any obligation under any type of workers' compensation, disability, or similar law." (Doc. 1-1 at 24.)

State Farm asserts that the plain language of the Workers' Compensation Exclusion in the State Farm Policy bars coverage because Triple L possessed an obligation under the Montana Workers' Compensation Act ("WCA") to provide

workers' compensation coverage. (Doc. 84 at 8, 13, 22–23.) Triple L responds first that the Workers' Compensation Exclusion in the State Farm Policy does not apply. (Doc. 86 at 5–8.) Triple L argues, in the alternative, that the language in the Workers' Compensation Exclusion in the State Farm Policy proves ambiguous, and that this ambiguity must be construed in favor of extending coverage to Triple L. (*Id.* at 5, 8–12.) The Court evaluates these arguments in turn.

**A. Interpretation of the Workers' Compensation Exclusion.**

Montana law dictates that "the party seeking the benefit of a particular policy provision bears the burden of proving its application." *Travelers Cas. & Surety Co. v. Ribi Immunochem Research, Inc.*, 180 P.3d 469, 476 (Mont. 2005). State Farm argues that the WCA supplies the relevant legal standard for analyzing the Workers' Compensation Exclusion in the State Farm Policy. (Doc. 84 at 8–10.) Triple L urges the Court to avoid looking to the WCA to understand the exclusion's meaning and scope. (Doc. 86 at 7.) Triple L invites the Court to import the Ninth Circuit memorandum opinion's Employee Exclusion analysis into the Court's evaluation of the Workers' Compensation Exclusion in the State Farm Policy. (*Id.*) The Court declines the invitation.

The Ninth Circuit's memorandum opinion fails to support Triple L's argument for two reasons. First, the memorandum opinion, as discussed above, addresses only the State Farm Policy's Employee Exclusion. *Triple L*, 2022 WL

1616978, at *1–2. The Ninth Circuit did not evaluate the Workers' Compensation Exclusion in the State Farm Policy because the Court had granted summary judgment solely on the basis of the Employee Exclusion claim. (Doc. 68 at 11.) The plain text of Workers' Compensation Exclusion in the State Farm Policy indicates clearly that workers' compensation law supplies the relevant legal standard. (Doc. 1-1 at 24.) *Keller*, 482 P.3d at 644; *Park Place Apartments*, 247 P.3d at 239. The Workers' Compensation Exclusion specifies that the State Farm Policy bars coverage "for *any obligation under*" workers' compensation law. (Doc. 1-1 at 24 (emphasis added).)

The Ninth Circuit's memorandum opinion additionally draws an explicit distinction between the scope of insurance law and workers' compensation law. Exclusions to insurance coverage generally must "be narrowly and strictly construed because they run contrary to the fundamental protective purpose of an insurance policy." *Triple L*, 2022 WL 1616978, at *1–2 (quoting *ALPS Prop. & Cas. Ins. Co. v. Keller, Reynolds, Drake, Johnson & Gillespie, P.C.*, 482 P.3d 638, 644 (Mont. 2021)). Workers' compensation law, by contrast, sweeps more broadly due to its "distinct protective purpose of providing benefits to a broader category of workers." *Triple L*, 2022 WL 1616978, at *2 (citing Mont. Code Ann. § 39-71-105(1); *Carlson v. Cain*, 664 P.2d 913, 917 (Mont. 1983) (citation omitted)).

8

Courts in this District have applied Montana workers' compensation law when interpreting similar workers' compensation exclusions to insurance policy coverage. *Royal Indem. Co. v. Colmore*, No. CV 05-122-BLG-CSO, 2007 WL 9710078, *14 (D. Mont. Aug. 14, 2007), *aff'd*, 321 F. App'x 595, 597 (9th Cir. 2009); *Mountain W. Farm Bureau Mut. Ins. Co. Inc. v. Tutvedt*, No. CV 11-44-M-DWM, 2012 WL 256042, at *2 (D. Mont. Jan. 27, 2012). *Colmore* concerned insurance liability for the death of an employee who was killed while working on a ranch near Livingston, Montana. 2007 WL 9710078, at *3. *Tutvedt* involved insurance liability for a farm employee's injuries. 2012 WL 256042, at *2. *Colmore* and *Tutvedt* analyzed the contested workers' compensation exclusions under the WCA and concluded that the exclusions barred coverage. *Colmore*, 2007 WL 9710078, at *14; *Tutvedt*, 2012 WL 256042, at *2; *see also Newbury v. State Farm Fire & Cas. Ins. Co.*, 184 P.3d 1021, 1026–27 (Mont. 2008) (rejecting alleged ambiguity in workers' compensation exclusion in insurance policy).

Triple L relies upon *Liberty Corporate Capital Ltd. v. Animals of Montana, Inc.* to argue that the definition of "employee" in the State Farm Policy should dictate the Court's analysis. No. CV 14-54- BU-DWM-JCL, 2015 WL 12591709, * 8 (D. Mont. May 12, 2015). *Animals of Montana* addressed potential insurance coverage under the employer's liability policy for injuries suffered by a short-term employee who had been fatally mauled by a grizzly bear. *Id.* at *1. The workers'

9

compensation exclusion in *Animals of Montana* barred coverage "for any injury to any employee(s) &/or independent contractor(s) &/or volunteer(s)." *Id.* at *7. The insurer admitted that potential application of the workers' compensation exclusion "ultimately depend[ed]" upon the insurance policy's definition of "employee." *Id.* at *8. The district court concluded that the insurance policy's definition of "employee" controlled. *Id.*

The *Animals of Montana* policy's definition of "employee" excluded temporary workers. *Id.* at *6. The policy failed to define "temporary worker." *Id.* at *5. The insurer urged the court to look to the WCA for guidance as to who constitutes a "temporary worker." *Id.* at *6. The court rejected this invitation when the policy failed to define "temporary worker" in any manner, let alone in a manner that had been "crafted in consideration of workers' compensation law." *Id.* (quoting *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 537 (Ky. 2006)). The court concluded that a material question of fact remained regarding whether the worker who had been killed by a grizzly bear qualified as a "temporary employee" under the policy. *Animals of Montana, Inc.*, 2015 WL 12591709, at * 7. The court denied summary judgment on the basis that the insurer had failed to meet its burden of proving the worker's employment status. *Id.*

*Animals of Montana* proves distinguishable for two reasons. First, the policy exclusion at issue in *Animals of Montana* differs significantly from the Workers'

10

Compensation Exclusion in the State Farm Policy. *Id.* The language of the policy exclusion in *Animals of Montana* closely parallels the Employee Exclusion in the State Farm Policy. Both the *Animals of Montana* policy exclusion and the Employee Exclusion in the State Farm Policy contain the term "employee" and bar coverage for injuries arising out of their employment. Neither mentions workers' compensation law. *Compare Animals of Montana*, 2015 WL 12591709, at *7, *with* Doc. 1-1 at 24. The Workers' Compensation Exclusion in the State Farm Policy, by contrast, makes no mention of the term "employee." (Doc. 1-1 at 24.) It bars coverage for "obligation[s] under [] workers' compensation law" without making any reference to employment status. (*Id.*) Second, State Farm has made no claim that the definition of "employee" in the State Farm Policy should be used in determining coverage. State Farm argues instead that the WCA's statutory scheme controls the definition of "obligation" under workers' compensation law. (Doc. 84 at 18–23.)

Neither the Ninth Circuit's memorandum opinion nor the reasoning of *Animals of Montana* controls the scope of the Workers' Compensation Exclusion in the State Farm Policy. *Triple L*, 2022 WL 1616978, at *1–2; 2015 WL 12591709, at *8. The Court determines that the scope of the Workers' Compensation Exclusion in the State Farm Policy depends on the WCA's statutory scheme rather than on common law. *Colmore*, 2007 WL 9710078, at *14; *Tutvedt*,

11

2012 WL 256042, at *2. The Court will look to the applicable statutory provisions of the WCA to interpret the term "any obligation under" workers' compensation law as used in the State Farm Policy.

### B. Applicable WCA Provisions.

The WCA applies to "all employers and to all employees." Mont. Code Ann. § 39-71-401. The WCA's definition of "employer" includes "each prime contractor," "limited liability company," and "private corporation" "who has a person in service under an appointment or contract of hire, expressed or implied, oral or written[.]" *Id.* § 39-71-117(1)(a). "Employee" under the WCA means someone "in the service of an employer . . . under any appointment or contract of hire, expressed or implied, oral or written." *Id.* § 39-71-118(1)(a). The definition explicitly includes all contractors other than independent contractors. *Id.*

The WCA provides that "an employer who has any employee in service under any appointment or contract of hire, expressed or implied, oral or written, *shall elect to be bound* by the provisions of [workers' compensation plans]." *Id.* § 39-71-401(1) (emphasis added). Employees who are leased to another company are "presumed to be under the control and employment" of the company to which they are leased. *Id.* § 39-71-118(6). A borrowing employer may rebut this presumption by showing that the company furnishing the loaned employees satisfies both of the following criteria: (a) that the furnishing company "retains control over all aspects

of the work;" and (b) has obtained workers' compensation insurance for the worker. *Id.* § 39-71-117(3); *Total Mechanical Heating & Air Conditioning v. Emp't Rels. Div.*, 50 P.3d 108 (Mont. 2002).

### C. Whether Triple L Owed an "Obligation" Under the WCA.

State Farm argues that the Triple L owed Oeleis an obligation under the WCA to obtain workers' compensation coverage. (Doc. 84 at 9–10.) Triple L counters that it owed no obligation because Phoenix employed Oeleis. (Doc. 86 at 7–8.) Triple L additionally claims that the Workers' Compensation Exclusion in the State Farm Policy applies only where an insured seeks coverage for obligations arising directly from a workers' compensation claim. (*Id.* at 7.) No obligation arose, Triple L contends, because it never obtained worker's compensation coverage for Oeleis. (*Id.*) Both of Triple L's arguments falter.

First, Triple L cannot rebut the presumption that it employed Oeleis for purposes of workers' compensation law. Mont. Code Ann. § 39-71-118(6). The Ninth Circuit's memorandum opinion left undisturbed the Court's findings regarding the extent of Triple L's day-to-day control over Oeleis. *Triple L*, 2022 WL 1616978. The Court determined as a matter of law that "Triple L maintained the right to exercise significant control over the detail of Oeleis' work" and that "Triple L retained exclusive supervisory control over all aspects of the bulk mail delivery operations and equipment, particularly including safety." (Doc. 68 at 11,

6.) Triple L, not Phoenix, retained control over "all aspects" of Oeleis's work. Mont. Code Ann. § 39-71-117(3). Oeleis qualifies as a Triple L employee for purposes of the WCA. *Id.* § 39-71-118(1)(a).

Second, Triple L misconstrues the nature of obligations under workers' compensation laws. Workers' compensation exclusions typically preclude coverage for injuries suffered by an employee where an employer possesses a statutory obligation under workers' compensation law that could have been handled through a workers' compensation claim. *Producers Dairy Delivery Co., Inc. v. Sentry Ins. Co.*, 718 P.2d 920, 923 (Cal. 1986); *Liberty Mut. Ins. Co. v. United Nat'l Ins. Co.*, 731 P.2d 167, 170 (Haw. 1987). The question of whether an employer obtained workers' compensation coverage proves immaterial. To reward an employer for failing to abide by its statutory obligations would undermine public policy and would create perverse incentives for employers. Mont. Code Ann. § 39-71-105.

"Where an employer has failed to comply with the workers' compensation statute, liability in actions for damages expressly permitted by [the] workers' compensation statute in that situation" constitutes an obligation under workers' compensation law. *Tri-State Constr., Inc. v. Columbia Cas. Co.*, 692 P.2d 899, 903 (Wash. App. 1984); *Evanston Ins. Co. v. Am. Remedial Techs Int'l, Inc.*, No. CV 09-8889 CAS (VBKx), 2010 U.S. Dist. LEXIS 54022, *12 (C.D. Cal. May 3,

2010). The insured in *Evanston* had chosen not to obtain workers' compensation insurance. 2010 U.S. Dist. LEXIS 54022, at *12. The district court determined nevertheless that the insurance policy barred coverage for the worker's injuries "because the Policy at issue explicitly excludes [the insured's] obligations under workers' compensation law." *Id.*

Oeleis qualifies as Triple L's employee under the WCA. Mont. Code Ann. § 39-71-118(1)(a). Triple L owed Oeleis an obligation under the WCA to obtain workers' compensation coverage. *Id.* § 39-71-401(1). The undisputed facts establish that Triple L organized Phoenix in part to avoid paying higher workers' compensation rates after Jeffrey Love suffered an injury while working for Triple L. (Doc. 35 at 10–11.) Triple L now provides workers' compensation coverage for its delivery drivers and has admitted that not obtaining workers' compensation coverage for Oeleis had been a mistake. (*Id.* at 24–26.)

The fact that Triple L failed to obtain workers' compensation coverage for Oeleis does not alter its obligations under the WCA. *Tri-State*, 692 P.2d at 903; *Evanston*, 2010 U.S. Dist. LEXIS 54022, at *12. The Workers' Compensation Exclusion in the State Farm Policy bars Triple L's coverage. *Producers Dairy Delivery*, 718 P.2d at 923; *Liberty v. United Nat'l*, 731 P.2d at 170.

**D. Whether the Workers' Compensation Exclusion Proves Ambiguous.**

Triple L advances an alternative argument that the Court ought to extend coverage due to inherent ambiguity in the State Farm Policy. (Doc. 86 at 5, 8–12.) Triple L argues that the following terms and phrases in the Workers' Compensation Exclusion in the State Farm Policy independently give rise to ambiguity: "for that Insured's Insurer," "Insured," and "for any obligation under." (*Id.* at 9–12.)

"An ambiguity exists when an insurance policy, taken as a whole, is reasonably subject to two different interpretations." *Farmers Alliance Mut. Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998) (citation and internal quotation marks omitted). Any ambiguity in an insurance policy "must be construed in favor of the insured, and in favor of extending coverage." *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, 709 (Mont. 2003) (quoting *Holeman*, 961 P.2d at 119).

The insurer in *Holeman* argued that the insurance policy at issue required claimants to demonstrate "entitlement to damages" from the other insured to recover underinsured motorist benefits. 961 P.2d at 119. The policy contained another provision mandating that claimants "exhaust all applicable liability policies" before they could recover benefits. *Id.* The Montana Supreme Court determined that the insurer's proposed contractual interpretation would have

"place[d] the policy's various provisions in conflict, thereby giving rise to an ambiguity." *Id.* at 120.

The insurance policies at issue in *Mitchell* contained similarly conflicting provisions. 68 P.3d at 709. The insured had paid separate premiums for uninsured motorist coverage for his five vehicles. *Id.* The Montana Supreme Court determined that the insurance policies proved ambiguous when their definition of "underinsured motorist," the offset provision, and the anti-stacking provision contradicted the expectation created by the policies' declarations page that coverage had been paid for and was available. *Id.* at 710.

Triple L's efforts to identify ambiguity in the State Farm Policy prove unavailing. Triple L argues that the term "Insured" could mean either Triple L or Oeleis and that "Insurer" could mean either State Farm or some other insurer. (Doc. 86 at 9–11.) The term "obligation," according to Triple L, means an obligation imposed on an insured "pursuant to a workers' compensation or disability claim." (*Id.* at 12.) These purported inconsistencies differ markedly from the conflicting insurance policy provisions in *Holeman* and *Mitchell*. The insurance policy in *Holeman* imposed contradictory requirements upon claimants that made compliance with both provisions an impossibility. 961 P.2d at 120. The policy in *Mitchell* contained limitations that contravened a consumer's reasonable

17

expectation of coverage and rose to the level of public policy violations. 68 P.3d at 711.

No such ambiguity exists here. A reasonable consumer would interpret "Insured" as Triple L, the listed insured in the State Farm Policy. Triple L's suggested interpretation of "obligation" mirrors its unsuccessful arguments regarding the applicability of the Workers' Compensation Exclusion in the State Farm Policy. Triple L fails to allege any convincing ambiguity created by the terms of the Workers' Compensation Exclusion in the State Farm Policy. *Holeman*, 961 P.2d at 120; *Mitchell*, 68 P.3d at 710–11. The Court will grant summary judgment in favor of State Farm.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Plaintiff State Farm's Motion for Summary Judgment (Doc. 33) is **GRANTED.**

2. Defendant Triple L's Motion for Summary Judgment (Doc. 37) is **DENIED.**

3. The Clerk shall enter judgment in favor of State Farm Mutual Automobile Insurance Company.

DATED this 2nd day of December, 2022.

_____
Brian Morris, Chief District Judge
United States District Court